FILED
2011 May-05  PM 02:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROLAND ALLEN,                          )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )        Case No. 1:10-cv-769-TMP
                                       )
CLP CORPORATION, d/b/a                 )
McDONALDS, INC.,                       )
                                       )
            Defendants.                )

**<u>MEMORANDUM OPINION</u>**

This cause is before the court on the motion for summary judgment filed November 1, 2010, by the defendant, CLP Corporation, d/b/a McDonald's.  Defendant seeks dismissal of plaintiff's claim arising under 42 U.S.C. § 1981, based upon an absence of evidence to support plaintiff's claim.[1]  This matter has been fully briefed.  The court has considered the pleadings, evidence, and arguments set forth by both parties.[2]  The parties have consented to the exercise of jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

---

[1]     It is unclear whether defendant seeks summary judgment on the other claim set forth in the amended complaint, which asserts a violation of 42 U.S.C. § 2000a, alleging that plaintiff was denied equal access to the restaurant at issue on the basis of his race.  Defendant specifically addresses only the § 1981 claim, but prays for relief in the form of dismissal of all "claims."  By separate order, the court has notified the parties, pursuant to Rule 56(f), that the court may consider summary judgment with respect to the § 2000a claim as well.

[2]     The only evidence offered in support of the motion for summary judgment is the deposition of the plaintiff, offered in full (doc. 11-3).  The only evidence offered in opposition to the motion for summary judgment is the affidavit of plaintiff (doc. 15).  Defendant has moved to strike the affidavit, and that motion will be resolved *infra*.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  Id. at 323.

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting former Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings.  Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient

2

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court "shall" grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The evidence supporting a claim must be "substantial," Marcus v. St. Paul Fire and Marine Ins. Co., 651 F.2d 379 (5th Cir., Unit B, 1981); a mere scintilla of evidence is not enough to create a genuine issue of fact.  Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004); Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1249-1250 (11th Cir. 2004).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the

evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).


## FACTS

Plaintiff Roland Allen brought this action seeking declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys fees pursuant to 42 U.S.C. § 2000a *et seq.,* and 42 U.S.C. § 1981. Plaintiff contends that the defendant wrongfully excluded him from a McDonald's restaurant located in Birmingham, Alabama, on the basis of his race, in violation of his civil rights. Plaintiff's claims arise from an incident that occurred on July 10, 2009, at the McDonald's restaurant at 1568 Montclair Road.

Viewing the pleadings in the light most favorable to the non-moving party, in this case the plaintiff, the following facts are relevant to the instant motion. On the morning of July 10, 2009, plaintiff, an African American, went to the restaurant between 8:30 and 9:00 a.m. and purchased a cup of coffee. He had visited the restaurant regularly, coming in at least three to four times per week for about three years. During that time, a group of six Caucasian men also frequently visited the

restaurant.  Plaintiff knew the group "usually" sat at a particular table large enough to accommodate their group.  On July 10, plaintiff arrived before the group of men, and sat at the table where the group of men usually sat.  He drank his coffee at the table for approximately 30 to 40 minutes, undisturbed by either defendant's employees or other customers.  After plaintiff had been there for 30 to 40 minutes, one of the men from the group came into the restaurant.  He sat down at the table where plaintiff was sitting, but there is no indication that he said anything to plaintiff.  The man sat at the table for about 20 or 30 minutes, when he then told plaintiff "I'm going to need for you to get up from this seat because we have other peoples that come over here and sit in this seat, we're going to need for you to get up."  At that point another member of usual group of six arrived and joined the first man at the table with plaintiff.  One of the men then told plaintiff that he was "going to need for [plaintiff] to get up from this seat" because other people in the group were coming in.[3]  The second man also asked plaintiff to "get up and move" because more people were coming.[4]  Plaintiff told the men they should move, and then the man began to yell at plaintiff; plaintiff yelled back at the men.  One of the men said "that is what is wrong with you people."

---

[3]     Defendant's brief alleges that a third man joined the table, but the deposition testimony cited seems to the court to describe only two men who had arrived from the group.

[4]     Plaintiff described the encounter this way:

A: Then another man came in and sit next to him [the first man] and he said the same thing that he had said.  We got some more peoples coming here and we're going to need for you to get up and move, and I told him that I'm not going to get up and move.  I said – I told him there's plenty more tables over here, y'all can go sit at them.  He said, no, I need for you to get up.  And then he started to yell.  When he started to yell I yelled back at him, and at that time the manager, Ms. Gail [Frazier], came over and she said what is going on over here.

(Plaintiff's Depo., p. 48-49).

5

The store manager, Gail,[5] an African American, came over to the table because she "heard a commotion."[6]  She asked plaintiff what was going on.  Gail was told that plaintiff had been sitting at the table before the two men arrived.  She told plaintiff that "you know they sit in these seats," (Plaintiff's Depo., p. 49) or "you know these people sit over here first," (Plaintiff's Depo., p. 63), and plaintiff replied, "yes, but they wasn't sitting here today."  (Plaintiff Depo., p. 63).  Gail told plaintiff that she was "going to need for [plaintiff] to get up."  He protested and asked why he had

---

[5]      The defendant refers to the manager as Gail Frazier, but the only evidence submitted, plaintiff's deposition, refers to her only by her first name.

[6]      Plaintiff's deposition is clear that Gail's presence was precipitated by a loud exchange, which was started by one of the Caucasian men, and in which plaintiff participated. (Plaintiff's Depo., p. 66).  Even so, the plaintiff's brief filed in opposition to the motion for summary judgment (doc. 14), states that the "verbal altercation was not ongoing" when Gail approached plaintiff and the two Caucasian men.  The brief, which cites to p. 69 of plaintiff's deposition (doc. 11-3), clearly misrepresents the following testimony:

> Q.      And then you got loud back to the customer.  What did you say back to the customer?
> A.      I told him I wasn't going to get up and go no place.
> Q.      And that's when Ms. Gail came over?
> A.      When we both got loud, which he got loud first.
> Q.      I understand.
> A.      I got loud second.
> Q.      Correct.
> A.      That's when she came over.
> Q.      We're on the same page.  And she asked you what was going on?
> A.      She asked me what was going on.

(Allen Depo., pp. 69-70, Doc. 11-3 p. 18).

to move, and she replied, "because I said so."[7]  She then winked at the white men.[8]  Plaintiff told

Gail that "that she was being a puppet."  (Plaintiff's Depo., p. 63-64).  As Gail walked away from

---

[7]      Plaintiff described his conversation with Gail Frazier this way:

A: ... At that time the manager, Ms. Gail [Frazier], came over and she said what is going on over here.
And I told her that these gentlemen asked me to get up and leave because they got somebody else coming over here to sit in these seats.  And she concluded you know they sit in these seats.  And my response was that they wasn't sitting here today.  And she said I'm going to need for you to get up.  And I said to her why should I get up, I ain't caused no problem, I was here first.  And she said that's because I said so.  And if you don't I'm going to go call the police.  And when she made those statements like that she went and got on the phone.

(Plaintiff's Depo., p. 49).

[8]      That she winked at the white men was not mentioned at all in plaintiff's deposition, but raised for the first time in his affidavit in opposition to summary judgment.

7

the table and toward the telephone, plaintiff told her she "ain't nothing but a white man's nigger."[9]

_____

[9]     The affidavit submitted by the plaintiff "clarifies" some of the facts testified to in the deposition.  Plaintiff asserts that going to McDonald's for morning coffee was a "routine" that he had followed for about three years, three to five days per week, and that McDonald's had "a practice of allowing patrons to sit on the premises to consume their purchases." (Doc. 15, ¶¶ 3-4).  The group of Caucasian men would meet three to five days per week at the McDonald's for coffee.  (Id. at ¶5).  The restaurant at issue did not have reserved seating.  In addition, the affidavit *adds* certain testimony: that Gail winked at the Caucasian men after she told plaintiff to leave the restaurant, and that he was asked to leave before he finished consuming his coffee.  Finally, defendant argues that the affidavit *contradicts* the plaintiff's own deposition testimony in that he asserts that he called Gail "a white man's nigger" as she walked away from the table to call the police.  (Id. at ¶17).  In his deposition, plaintiff first testified that Gail was at the table ("in the same spot") when he made that comment, and later said he doesn't remember exactly when in the confrontation he called her a "white man's nigger."  (Doc. 11-3, Plaintiff's Depo. pp. 71, 73).  The affidavit also contradicts plaintiff's deposition testimony in that it declares that he did not recognize the two Caucasian men as two of the group who came in regularly.  (Doc. 15, ¶ 7).  In the deposition, plaintiff stated: "I told Ms. Gail they asked me to get up and move and Ms. Gail looked at me and she said that's – you know these people sit over here first.  I said yes, but they wasn't sitting here today."  (Plaintiff's Depo., p. 63, Doc. 11-3, p. 16).

         To the extent that the affidavit clarifies or adds information to the deposition testimony, the motion to strike the affidavit (doc. 17) is due to be and is hereby DENIED.  The clear law of the Eleventh Circuit Court of Appeals, however, requires that an affidavit that contradicts clear and unambiguous prior deposition testimony by the same witness, without explanation, is a "sham" and does not create a material issue of fact as to warrant denial of a well-supported motion for summary judgment.  Such affidavits may be stricken.  See Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir. 2010) ("A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction."); Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").  The sham affidavit rule "is applied sparingly because of the harsh effect it may have on a party's case." Allen v. Bd. of Pub. Educ. for Bibb County, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting Rollins v. TechSouth, 833 F.2d 1525, 1530 (11th Cir. 1987)).  Nevertheless, because the court cannot say that plaintiff's deposition testimony was clear and "unambiguous" as to when he admittedly called the manager a "white man's nigger," the motion to strike is DENIED as to paragraph 17 of the affidavit.  In his deposition testimony, plaintiff clearly said he recognized the men as part of the group who normally congregated there every morning.  Because paragraph 7 of the affidavit attempts to contradict his clear and unambiguous deposition testimony on this point, the motion to strike is GRANTED as to paragraph 7 of the affidavit.   The statements that add or clarify also are not due to be stricken, and the motion is therefore DENIED as to the remaining paragraphs.

8

Plaintiff then left the restaurant.

Less than ten minutes later, a Birmingham police officer knocked on the door to plaintiff's home.  Plaintiff later called the McDonald's corporate office and talked to a woman he identified as Ms. Brown, who told him: "You did that on purpose," and ultimately hung up the phone.  Three or four days later, plaintiff called an officer of McDonald's at the corporate office, Mr. Woods.  Mr. Woods told him that Gail "was wrong," that "that's not the way McDonald's does business," and that plaintiff could go to the restaurant.  Plaintiff returned to the McDonald's restaurant on Montclair, and asked Gail if Mr. Woods had called her.  She told him he had, and that "it was okay" for plaintiff to come into the restaurant.

The defendant asserts that plaintiff's § 1981 claim is due to be dismissed because the plaintiff has failed to demonstrate that there is substantial evidence supporting every element of the claim. In particular, defendant contends that plaintiff cannot establish that any of *defendant's* conduct was racially motivated.

## DISCUSSION

The defendant asserts that the plaintiff's § 1981 claim based upon a deprivation of his right to make and enforce a contract is due to be dismissed because the plaintiff has failed to establish discriminatory intent and because plaintiff's contract with the defendant had terminated before the conduct complained of occurred.[10]  The relevant provisions of 42 U.S.C. § 1981 state: "All persons

---

[10]     Because the defendant has specifically sought dismissal only of the § 1981 claim, only that claim (Count II) is addressed herein.  As addressed in an order entered separately, however, the court notes that the same lack of evidence of discriminatory intent appears fatal to plaintiff's § 2000a claim as well.

... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens, ...."

The statute further provides that the making and enforcing of contracts shall include the "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(a) and (b).   In this case, plaintiff asserts that because of his race, he was denied the contractual benefit of remaining at the table of his choice to drink his coffee.

The Eleventh Circuit Court of Appeals discussed the elements of a *prima facie* case of race discrimination under § 1981 in the realm of a retail transaction in <u>Kinnon v. Arcoub, Gopman & Assocs., Inc.,</u> 490 F.3d 886 (11th Cir. 2007).  <u>Kinnon</u> involved an African-American customer who sued a pizza restaurant after the restaurant delivered her order late.  After the customer refused to pay, the manager of the restaurant telephoned the plaintiff, threatened her, called her a "nigger," a "piece of shit," and a "nigger bitch."  490 F.3d at 889.   The court stated:

> The elements of a cause of action under § 1981 are "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson v. BellSouth Telecomms*., 372 F.3d 1250, 1270 (11th Cir. 2004) (citation omitted). Thus, to survive summary judgment, Kinnon must identify a genuine issue of material fact as to each element.

<u>Kinnon</u>, 490 F.3d at 891.  The court noted that there was no question as to the first element, that highly offensive racial slurs present direct evidence of the second element, and then proceeded to discuss the third element in detail.

In this case, as in <u>Kinnon</u>, there is no question that plaintiff is a member of a racial minority. The first element, therefore, is not in dispute.   The second element was proven in <u>Kinnon</u> by the use

10

of racial slurs.  In this case, however, unlike in Kinnon, plaintiff has failed to present any *direct* evidence of discriminatory intent.  The Eleventh Circuit Court of Appeals has stated that direct evidence of discriminatory intent is "evidence, which if believed, proves existence of fact in issue without inference or presumption."  Merrit v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997) (internal citations omitted).  Evidence that merely suggests discrimination, or evidence that is ambiguous because it is subject to more than one reasonable interpretation will not suffice.  In the instant case, it was plaintiff who used a racial epithet to refer to the McDonald's manager.  Further, the wink argued by plaintiff to be a sign of discriminatory intent cannot be interpreted as direct evidence.  Interpreting the wink would require inference or presumption.  The act of winking is, at the best, ambiguous.  Even if the wink were construed as a sign that Gail favored the group of white men over the plaintiff, there is absolutely no evidence that her favoritism was related to race.  In short, plaintiff offers no instance in which Gail showed any racial preference or bias.  The fact that she is the same race as the plaintiff, and that she created no problem for plaintiff during the hundreds of times he visited the restaurant prior to the incident, make an inference of discriminatory intent on her part unreasonable.  The court cannot *reasonably* infer from the wink that the African-American McDonald's manager was motivated by a racial animus.

The Eleventh Circuit has yet to address a case involving § 1981 discrimination within the realm of retail transactions where the plaintiff failed to assert direct evidence of discriminatory intent.  In fact, the court noted in Kinnon that it "need not decide whether the particular formulation of the *prima facie* test applied by the district court was the appropriate test under the circumstances." Kinnon, 490 F.3d at 893.  However, the Eleventh Circuit has adopted the McDonnell Douglas

11

burden-shifting framework in employment cases alleging discrimination based on indirect evidence. See Lewis v. Metropolitan Atlanta Rapid Transit Auth., 343 Fed. Appx. 450, 452 (11th Cir. 2009) (holding that circumstantial evidence could be characterized under the burden-shifting framework). The test adopted by several district courts and other circuits employing the burden-shifting analysis infers intentional discrimination where the plaintiff can show that similarly situated individuals of a different race received more favorable treatment. Alford v. Cordele Foods, Inc., 2007 WL 2904008 (M.D. Ga. 2007) (citing Slocum v. Waffle House, Inc., 365 F. Supp. 2d 1332, 1338 (N.D. Ga. 2005); Jackson v. Waffle House, 413 F. Supp. 2d 1338, 1355 (N.D. Ga. 2006)); See also Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253, 257 (4th Cir. 2001); Lizardo v. Denny's, Inc., 270 F.3d 94, 101-04 (2nd Cir. 2001). But see Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 872 (6th Cir. 2001) (refusing to impose requirement that plaintiff show evidence of similarly situated shoppers but requiring either similarly situated individuals or markedly hostile service which would be objectively unreasonable).

In Jackson v. Waffle House, the district court required the plaintiff to show "an apt comparator of a different race who was not subjected to the same harsh treatment with regard to the enforcement of a contract as was the plaintiff." 413 F. Supp. 2d at 1355. A comparator in a public accommodations case "need not be identical to [a plaintiff,]" but "'there should be a reasonably close resemblance of facts and circumstances.'" Slocumb v. Waffle House, Inc., 365 F. Supp. 2d 1332, 1339 (N.D. Ga. 2005), (quoting Lizardo v. Denny's Inc., 270 F.3d 94 at 101 (2d Cir. 2001)). To evaluate the "apt" nature of an alleged comparator, the court again turns to the more developed field of employment law.

When discussing the "similarly situated" or comparator aspect of a *prima facie* discrimination case, the Eleventh Circuit Court of Appeals has stated that the plaintiff in an employment context "must show that he and the employees are similarly situated in all relevant respects." Holifield, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). Additionally, in cases involving an employer who takes disciplinary action against two employees and allegedly treats the non-minority employee more favorably than the minority employee, the court has held that "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Wright v. Sanders Lead Co., Inc., 217 Fed. Appx. 925, 929 (11th Cir. 2007) (citing Holifield, 115 F.3d at 1562). Yet "[t]he most important factors . . . are the nature of the offenses committed and the nature of the punishments imposed." Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir.1998), *opinion modified by* 151 F.3d 1321 (11th Cir. 1998). In such instances, the Eleventh Circuit Court of Appeals has held that the comparator must be "nearly identical." See, *e.g.*, Brown v. Jacobs Engineering, Inc., 401 Fed. Appx. 478 (11th Cir. 2010) (holding that Caucasian male managers were not similarly situated in quantity or qualitiy of conduct to African American female employee).

In this case, plaintiff, an African American dining alone, who already had been occupying a large table for over an hour drinking coffee, asserts that he was treated less favorably than a group of six Caucasian men who had not yet begun to dine.[11]   The Second Circuit Court of Appeals

---

[11]   Plaintiff clearly alleges that the two Caucasian men who engaged in the loud confrontation with plaintiff are his comparators because they were not "asked to give up their seats nor leave the restaurant, as was Allen." (Doc. 14, p.3).

examined a case in which a group of Asian Americans were required to wait while a smaller group

of Caucasians were seated before them.   That court noted:

> We agree that plaintiffs failed to establish that similarly situated patrons were given
> preferential treatment in seating or that plaintiffs' evidence of hostility gives rise to
> an inference of discrimination. When plaintiffs seek to draw inferences of
> discrimination by showing that they were "similarly situated in all material respects"
> to the individuals to whom they compare themselves, *Shumway v. United Parcel
> Serv., Inc.*, 118 F.3d 60, 64 (2d Cir.1997), their circumstances need not be identical,
> but there should be a reasonably close resemblance of facts and circumstances.
> *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000); see also *McGuinness
> v. Lincoln Hall*, 263 F.3d 49 (2d Cir. 2001). What is key is that they be similar in
> significant respects. *Id*.
>      The district court's conclusion that the record failed to show that white
> patrons who were seated before them were similarly situated to plaintiffs is sound.
> Whether two people are similarly situated is usually a question of fact for the jury.
> *Graham*, 230 F.3d at 39. However, plaintiffs have not offered sufficient evidence
> from which a jury could reach that conclusion. As the district court noted, the
> groups to which plaintiffs sought to compare themselves were smaller in size, *an
> obviously significant factor in restaurant seating*. The plaintiffs identified three
> groups of individuals who were seated before them: the Warnock party of four
> Caucasians, a party of two to three Caucasians, and a third group of three to four
> Caucasians. The record is devoid of evidence that the tables at which these smaller
> groups were seated could have accommodated plaintiffs' original party of five,
> much less their expanded party of seven. Plaintiffs have failed to offer evidence
> from which to conclude that they were similarly situated to these groups.

Lizardo v. Denny's Inc., 270 F.3d 94, 101-02 (2d Cir. 2001)(emphasis added).   Plaintiff has failed

to offer any authority for the proposition that a restaurant must provide seating to patrons irrespective

of the size of the party, or without regard to those who have had time to consume their purchase as

to those who have just arrived and are waiting the opportunity to dine.

The court finds that the plaintiff has failed to demonstrate the requisite similarity between

himself and the group of six white men with sufficient evidence to warrant a jury inferring any

discriminatory intent.  The Caucasian men were part of a group of six who had not yet begun to dine.  The plaintiff was a single patron with a single cup of coffee occupying a large table for over an hour.  As indicated by the <u>Lizardo</u> decision, it is a legitimate concern in the restaurant business that restaurants be able to accommodate customers with tables appropriate for the size for the diners' party.  It is reasonable for restaurants to attempt to seat large parties at large tables and single patrons at small tables.  The dissimilarity in the size of the parties implicates a legitimate business motive, making an inference of racial animus less likely and more speculative.  A reasonable jury simply cannot infer a racial animus from the fact that a large group waiting to dine is offered a large table over a single customer who has occupied the table for over an hour.  The plaintiff and the group of white men were not substantially similar for comparison purposes, due both to their relative numbers and the fact that the group was waiting to dine and the plaintiff had been there an hour already.

Taking plaintiff's position to the extreme, a single patron of a restaurant could order a cup of coffee and then occupy the largest table in the establishment exclusively from opening until closing.  A manager's decision to show some preference for a *group* of diners who have yet to order over a *single* diner who already has been served and has had ample time to finish his coffee, does not evidence discrimination, absent some more telling conduct, such as abusive language or outright hostility.  In this case, the African American manager simply asked one customer to make room for a larger group of customers.  To prove that the Caucasian men were similarly situated, the plaintiff would have to demonstrate that a single Caucasian customer was allowed to occupy a large table for well over an hour after he was served while a large group of African Americans who had not yet been served their food waited for that same table.  There is no evidence that the McDonald's

manager engaged in any abusive language or hostility.  Indeed, plaintiff himself admits that he had been welcomed at the restaurant several times weekly for three years, as had the group of white men. And on this occasion, plaintiff was asked by the manager simply to move to a different table to accommodate the larger group.  He was asked to leave only after he refused to move.  This can hardly be characterized as racial hostility.  The only abusive language was directed by plaintiff toward the manager.

The facts in this case simply fail to show any discriminatory intent.   See, *e.g.*, Benton v. Cousins Properties, Inc., 230 F. Supp. 2d 1351, 1378 (N.D. Ga. 2002) (holding that rudeness to an African American customer was a result of a dispute about the purposes of the customer's use of a rented room, and not related to the race of the customer).  Even where size of the group alone is not dispositive, the plaintiff must show a "reasonably close resemblance of facts and circumstances." Slocumb v. Waffle House, Inc., 365 F. Supp. 2d 1332, 1339 (N.D. Ga. 2005) (quoting Lizardo, 270 F. 3d 94).  Here, it cannot reasonably be inferred that the African-American manager asked plaintiff to move (and then to leave when he refused her request to move) *because* of his race, given *her* race and the legitimate business interest in accommodating the seating needs of all customers.  Because plaintiff has failed to demonstrate such a resemblance, plaintiff has not established any indirect evidence of discriminatory intent.

Even if plaintiff had established evidence of discriminatory intent, plaintiff also has failed to establish the third element of a § 1981 discrimination claim.  Plaintiff has failed to establish that he was denied any of the enumerated rights under the statute.  In Kinnon, the Eleventh Circuit noted

16

the "scant authority" present for application of § 1981 to retail transactions and adopted the Fifth

Circuit Court of Appeals' reasoning in Arguello v. Conoco, Inc., 330 F.3d 355 (5th Cir. 2003).

Arguello involved an Hispanic customer who sued a Conoco convenience store after the store

clerk exhibited rude conduct during the transaction.   After the clerk completed the transaction, a

confrontation arose between the clerk and Arguello during which the clerk shouted racial obscenities

and other derogatory remarks.  330 F.3d at 357.  The clerk subsequently locked Arguello's father out

of the store when he attempted to enter to obtain the clerk's name.  Id.  The court stated that

"[s]ection 1981 does not provide a general cause of action for race discrimination" and that

Arguello's claim must fail because she was able to ultimately complete her transaction.  Id. at 558-

59.

Similarly, in this instance, plaintiff has failed to establish any denial of the ability to enter

into a contract.  Plaintiff purchased his coffee (as he had done hundreds of times before) and was

able to sit for over an hour enjoying that single cup.  The court recognizes that restaurant transactions

are distinguishable from other retail transactions in that part of the bargain is the dining experience.[12]

---

[12]      Although the defendant argues that the commercial transaction at issue here was
completed upon the delivery of the coffee to plaintiff, and that therefore he was not deprived of any
contractual right, the court does not find this argument compelling.  Plaintiff is persuasive in arguing
that part of the benefit of the purchase of food at a restaurant with a dining room is the right to enjoy
the food on the premises.  While the court is willing to extend that window of contractual benefit
beyond the payment for and delivery of the coffee, see, e.g., Lester v. BING The Best, Inc., No. 09-
81525-CIV, slip op. 2010 WL 4942835, at *3 (S.D. Fla. Nov. 30, 2010), the court does not find that
the customer's right to enjoy that coffee extends indefinitely.  The contractual license to use the
restaurant's dining room to consume the food is subject to reasonableness.  A customer buying a
single cup of coffee is not entitled as part of the contract to remain in the dining room for an
unreasonably long period of time.  In Kinnon, the defendant's hurling of racial slurs on the phone
occurred after the "transaction had been terminated," and therefore did not give rise to a § 1981
claim.  490 F.3d at 982.  Here, the court need not determine whether the plaintiff's transaction had
terminated more than an hour after he received his coffee, when the McDonald's manager told him

However, the parties have failed to call to the court's attention to any case in which a § 1981 claim arose from the broader "dining experience" right – as opposed to a failure to be served – that was not accompanied by flagrant discriminatory conduct.  See, e.g., Charity v. Denny's, Inc., No. Civ A 98-0554, 1999 WL 544687, at *1 (E.D. La. July 26, 1999) (customers were allowed to order and eat, but were treated rudely and were told by a server that the server did not have to serve "niggers"); McCaleb v. Pizza Hut, 28 F. Supp. 2d 1043, 1046-48 (N.D. Ill. 1998) (customers were served pizza, but were told no drinks could be provided, and were not given utensils or any table service; in addition, employees called them "nigger" and "black bitch").  It has been noted that "Section 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process" and that a plaintiff must show "the loss of an actual contract interest." Morrison v. Borders Bookstore, No. 6:11-cv-31-Orl-19DAB, slip op. 2011 WL 485901, at *3 (M.D. Fla. Feb. 7, 2011).

The facts presented in the instant case show that the dispute between the manager and the plaintiff arose over the plaintiff's use of the large table for his consumption of a single cup of coffee, and not over the plaintiff's race.  The facts here show that plaintiff had never been discouraged from entering the McDonald's during his three years of "regular" visits, that he had never been denied the ability to purchase his coffee, and that he had never been denied the ability to stay on the premises and drink his coffee.[13]  The only time he was asked to leave was after he got involved in a loud

---

he would have to leave, because the plaintiff in this case has simply failed to demonstrate the element of intentional discrimination, as discussed supra.

[13]    The complaint does not set forth any claim relating to "access" to the restaurant except to allege in Count I that "the manager sent a police officer to plaintiff's residence with the sole purpose to intimidate and harass plaintiff and to threaten him with arrest, if he returned to the restaurant." (Amended Complaint, Doc. 7, ¶ 12). Although plaintiff's deposition makes much of the police officer's notification that Gail had "barred" him from the restaurant, he concedes that he

18

altercation and refused to relinquish a large table to a large group.  The court is unwilling to opine

that the management of a restaurant can never exercise such discretion in accommodating its

customers.[14]  The court is not announcing a *per se* rule that the contract license to use a dining room

to drink a cup of coffee ends after one hour.  Ordinarily, whether taking more than an hour to drink

a cup of coffee is reasonable is a jury question that cannot be decided as a matter of law.  Here,

however, plaintiff was asked to leave not because he had taken too long to drink his coffee; he as

asked to leave when he refused the manager's request to relinquish his large table to a large group.

Plaintiff enjoyed every benefit of his contract with McDonald's. A survey of the scant authority

available leads to the inescapable conclusion that poor service or rude treatment cannot form the

basis of a § 1981 claim absent *both* the denial of some benefit and evidence of discriminatory intent.

In this case, there is no substantial evidence of discriminatory intent, nor was plaintiff denied the

reasonable benefit of his dining contract with defendant.

Because the defendants have demonstrated that plaintiff has failed to produce evidence to

support a *prima facie* showing of illegal discrimination violative of § 1981, the motion for summary

judgment is due to be granted, and Count II of the complaint is due to be dismissed.

---

never attempted to visit the restaurant, was told by a McDonald's "officer" that he was not barred
from the restaurant, and that he has subsequently visited the restaurant.  Plaintiff has no evidence that
he was "barred," except the inadmissible double hearsay of the plaintiff relating what the officer
allegedly told  him about what Gail allegedly said to the officer.

[14]       The plaintiff has failed to point the court to any case, from any circuit, in which
conduct like that at issue here has been held to constitute a violation of  § 1981, and the court finds
none.  The court finds few opinions dealing with the issue, but virtually all of the successful  § 1981
litigants  – and some who were not successful – alleged scenarios that involved far more egregious
conduct than the actions of the McDonald's manager in telling the plaintiff that he needed to leave
the restaurant.

## **CONCLUSION**

Based on the foregoing undisputed facts and legal conclusions, the court finds that the motion for summary judgment filed by the defendants is due to be granted. The motion is due to be granted as to the § 1981 claim, and that claim (Count II of the Complaint) is due to be dismissed with prejudice. A separate order will be entered in accordance with the findings set forth herein.

DATED this 5th day of May, 2011.


_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE