IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROLAND ALLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:10-cv-769-TMP |
| | ) |
| CLP CORPORATION, d/b/a | ) |
| McDONALD'S, INC., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION

In a memorandum opinion and order entered May 5, 2011, the court granted the defendant's motion for partial summary judgment, finding that there was no genuine issue of fact and that the defendant was entitled to judgment as a matter of law with respect to Count II of the plaintiff's amended complaint, alleging a claim under 42 U.S.C. § 1981. While viewing the evidence favorably to the non-moving plaintiff, the court concluded that "The facts in this case simply fail to show any discriminatory intent." (Doc. 20, p. 16). Plaintiff's § 1981 claim was due to be dismissed in the absence of evidence from which a reasonable jury could infer that he was denied the benefits of his contract with the defendant *due to racial animus* on the part of the defendant.

Also entered on May 5, 2011, was an order notifying the parties pursuant to Rule 56(f) of the Federal Rules of the Civil Procedure that it appeared to court that the same absence of evidence of racially discriminatory animus that doomed plaintiff's § 1981 claim also indicated that summary judgment was due to be granted with respect to his public accommodations claim in Count I. The order gave the parties ten (10) days to respond or offer any new evidence or argument concerning

Count I of the complaint. On May 20, 2011, plaintiff filed a response along with a motion to extend the time for filing by one day. The motion for extension of time (Doc. 26) will be granted.

Although the plaintiff has filed a response to the court's Rule 56(f) order, he also filed a Rule 59 motion to alter or amend the order granting summary judgment against his § 1981 claim. His response to the Rule 56(f) notice expressly incorporates the arguments and authorities cited in his Rule 59 motion as the grounds for opposing summary judgment on the public accommodations claim in Count I. Because the same arguments are advanced for both filings, they will be discussed jointly.

On May 20, 2011, the plaintiff filed his Rule 59 motion arguing that the court committed several errors in granting partial summary judgment against him. In granting summary judgment as to Count II, the court concluded that plaintiff could not produce substantial evidence of intentional racial discrimination in his treatment by the defendant. The court will attempt to address each of plaintiff's criticisms of that conclusion.

First, plaintiff alleges that the defendant abandoned the argument that plaintiff failed to show evidence of a racially discriminatory animus motivating Gail Frazier's decision to ask plaintiff to move to another table. Plaintiff contends that "The law is well settled that were [sic] a moving party seeks to make a legal argument and fails to give any case or statutory authority to support its contention, it is the same as if the defendant made no argument at all." He cites <u>Continental Technical Services, Inc. v. Rockwell International Corp.</u>, 927 F.2d 1198, 1199 (11th Cir. 1991), in support of this proposition, and asserts, "Therefore, defendant made no argument that plaintiff failed to establish discriminatory intent."

While it is true that, on summary judgment, the parties are required to formulate their own arguments and the court is not required to sort through the evidence looking for arguments not made by the parties, it is not true that the mere failure to cite to case or statutory authority constitutes an abandonment of an argument actually articulated. A fair reading of defendant's brief in support of summary judgment makes plain that defendant actually advanced the argument that there was no substantial evidence of a racially discriminatory intent on the part of the defendant's manager. Beginning at page 7 of defendant's brief is an entire section under the heading, "THE PLAINTIFF FAILS TO ESTABLISH A DISCRIMINATORY INTENT." There can be no doubt that defendant did not abandon this argument.

Plaintiff maintains that defendant failed to *cite* any case or statutory authority, and that this alone constitutes an abandonment of the argument. In this case, however, defendant cited to Kinnon v. Arcoub, Gopman & Associates, Inc, et. al., 490 F.3d 886, 890 (11th Cir. 2007), as the legal basis for the its argument, and it is unclear to the court what else plaintiff would have defendant do. Furthermore, it simply is not true that the mere failure to *cite* case or statutory authority amounts to abandonment of an argument that is otherwise factually and legally developed in a brief on summary judgment. This is not a case like Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301 (11th Cir. 2000), where an argument was deemed abandoned because, although pleaded, it was simply never referred to in briefs or in evidence. In the instant case, there can be no doubt in reading defendant's brief that defendant fully intended to advance, and did advance, the argument that the evidence fails to show any illegal discriminatory animus. Nor is this case like Continental Technical Services, Inc. v. Rockwell International Corp., 927 F.2d 1198 (11th Cir. 1991), cited by plaintiff. Continental was a cased on appeal before the Eleventh Circuit,

implicating Rule 28(a)(4) of the *Federal Rules of Appellate Procedure* and that rule's explicit requirement for the citation of authorities. Such does not apply to the summary judgment motion before this court. But even if such a rule existed in case law, the new revisions to Rule 56 raise serious doubt that the mere failure to cite authority is an abandonment of an otherwise articulated argument. Although Rule 56(e) deals with how a court may handle a party's failure to support or address a *factual* assertion, nothing in the rule requires citation to legal authority. Also, Rule 56(f) allows a court, after notice and chance to respond, to grant summary judgment "on grounds not raised by a party." Because this provision authorizes the court to grant summary judgment on an *argument* not even raised by the parties, it seems clear that the court is not precluded from granting summary judgment even when no legal citations would exist in support of the argument not made by the parties.[1] Although the court is not *required* to scour the record for arguments not formulated by the parties, Rule 56(f) makes plain that it is not *prevented* from doing so. Thus, the purported failure of the defendant to cite legal authority does not prevent the court from granting summary judgment.

Next, throughout plaintiff's Rule 59 motion, he contends that the court erroneously resolved disputed facts against him, rather than taking the evidence favorably to him as the non-movant. It is curious that this argument is made because the *only* evidence used to support and oppose the motion for summary judgment was testimony *from the plaintiff*. The only exhibit offered in support

---

[1] Note that even though Rule 56(f) requires the court to give notice and an opportunity for the parties to respond, this still would not require the moving defendant to *cite* legal authority. Assuming the court notified the parties of a basis for *granting* summary judgment, the party interested in responding would be the non-moving plaintiff. The moving defendant would not be required to respond to the court's Rule 56(f) notice, nor cite legal authority in support of the argument identified by the court.

of the Rule 56 motion was *plaintiff's* deposition testimony. (Doc. 11-3) The only additional evidence offered in opposition to the motion was *plaintiff's* affidavit. (Doc. 15). There simply was no other contrary evidence before the court from which "genuine issues" of material fact could arise. In short, there were no factual disputes to resolve because the only evidence relating to these events was *plaintiff's* evidence of what happened.

Turning to the court's statement of the facts material to summary judgment, plaintiff contends at various places in his Rule 59 motion that the court erred in concluding what the undisputed facts were for purposes of summary judgment. For example, he disputes that he was asked to moved because a "group" of white men wanted to sit at the large table he occupied. He asserts that there was no "group," but only two white men asking him to move to another table. Nonetheless, plaintiff testified to the following in his own deposition:

> Q: Now, when you started visiting the Montclair store at approximately 8:30 in the morning, did you notice there was a group of men that would congregate there every morning and have coffee and biscuits and things of that nature?
>
> A: They wouldn't be there every morning. They would be there some mornings. Some mornings they wouldn't be there.
>
> Q: How often would you say the men would be there?
>
> A: I would say that they would — they would be there some mornings, like I said, and some they don't.
>
> Q: Do you have a judgment, Monday through Friday, out of those five days how many they would be there?
>
> A: I'm going to say from three to four.
>
> Q: And how many men approximately, I know it varied from day-to-day, would you say would meet there at the McDonald's on Montclair?

>A: I'm going to say six.
>
>Q: And would they pull those tables together to talk?
>
>A: No, the tables are already together.
>
>Q: So it's a pretty big table, then?
>
>A: It's — it's like this table here (indicating), but it's just stacked together, just pulled together.
>
>Q: How many would that table seat, do you know?
>
>A: No, I'm going to have to — give me just a second. I'm going to say, to the best of my memory, it's six.

(Plaintiff's Depo., Doc. 11-3, pp. 35-36). There is little question that plaintiff understood that a "group" of white men wanted to use his table. When approached by the first two members of the group, plaintiff was aware that a "group" ordinarily sat at the table "three to four" times a week. He was aware that the two men who approached him were seeking on behalf of the group to sit at the table he occupied. See (Plaintiff's Depo., Doc. 11-3, pp. 48-49). Likewise, when the McDonald's manager approached him, both she and plaintiff knew that she was talking about the "group" of white men that normally sat at the table plaintiff was occupying. Plaintiff described it this way in his deposition:

>A: ... [A]nd at that time the manager, Ms. Gail, came over, and she said what is going on over here.
>   And I told her that these gentlemen asked me to get up and leave because they got somebody else coming over here to sit in these seats. And she concluded you know they sit in these seats. And my response was that they wasn't sitting here today. And she said I'm going to need for you to get up. And I said to her why should I get up, I ain't caused no problems, I was here first. And she said because I said so. And if you don't, I'm going to go call the police. And when she made those statements like that she went and got on the phone.

6

(Plaintiff's Depo., Doc. 11-3, p. 49). Plaintiff's own testimony clearly established the fact that he was aware of a "group" of white men who regularly sat at a particular table almost every morning. It was not a surprise to him when the two white men and the African-American manager asked him to get up and move to another table because a "group" of men needed the table. In the real world of restaurant management, the manager was faced with a lone black diner who had occupied a large table for about an hour[2] drinking coffee and a group of white men who had yet to order and dine, and who wanted to sit together at the large table plaintiff occupied. The group of patrons yet to dine was simply not a sufficiently similar comparator to plaintiff to authorize any reasonable inference of intentional discrimination. One cannot reasonably infer from these facts that the African-American manager asked the plaintiff to move *because* of his race, rather than because of a legitimate business desire to accommodate all patrons. The court noted previously that the request to plaintiff by the manager was not accompanied by hostility or insult, or any other fact that could tilt the balance toward a reasonable possibility that race was the motivation behind the manager's request that he move.[3]

---

[2] Plaintiff also seems to quibble with the court's assessment that he occupied the table for about an hour before being asked to move. From his own testimony, however, he said that he drank is coffee for 30 to 40 minutes before the first white man joined him at the table. It was then another 20 to 30 minutes before another white man arrived and the two asked him to give up his table for their group. At the very least, by his own estimate, he was at the table 50 minutes (30 + 20 minutes), and perhaps as much as an hour and ten minutes (40 + 30 minutes).

[3] Plaintiff testified that one of the white men commented, "that's what's wrong with you people," after he refused their request to move, and that plaintiff took this is a racial remark. But there is no evidence (indeed, the plaintiff's evidence is to the contrary) that the manager heard the comment or was aware of it in any way. The comment cannot be attributed to her.

Plaintiff argues that he was treated less favorably than the white customers because he was asked to leave the restaurant and the white customers were not. First, plaintiff's own testimony is that he left the restaurant and went home. He does not have personal knowledge of what happened with the white customers after he left. There simply is no evidence on that point, and the court cannot infer, from no evidence at all, that the white customers were treated favorably. But even assuming this to be true, the white customers still were not a sufficiently similar comparator to plaintiff, given that it was he who refused the manager's request to move to another table and it was he who called her a "puppet" and "white man's nigger." It is understandable that she barred plaintiff from the restaurant after he slurred her. There is no evidence that the white customers made any similar comments to her.

Finally, plaintiff also maintains that the court created a "one-hour" rule for the period of time a customer may reasonably use a restaurant dining room to consume his meal. Quite the contrary. At page 19 of the summary judgment opinion, the court expressly stated that it was not announcing such a *per se* rule. What the court did say is that, under the facts of this case, plaintiff cannot show that he was denied the full benefit of his contract with the defendant. He purchased a cup of coffee and sat at the large table for about an hour drinking it. Only when a group of customers asked to use the large table at which he was seated was he asked to move. Even this request would not have deprived plaintiff of the contractual benefit of using the dining room to drink his coffee, as he could have moved to another table and continued drinking his coffee. Certainly, the contractual benefit a restaurant's customer obtains is the right to reasonably use the dinning room, not the right to a *particular* table. A restaurant must reserve control over the way customers are seated, as long as the

manner of seating is not racially discriminatory,[4] in order to balance the often conflicting needs and desires of its customers. Plaintiff was asked to *leave* the restaurant only after he refused the manager's request to move to another table, and he was temporarily barred from the restaurant only after he called the manager a "puppet" and a "white man's nigger." Thus, plaintiff was not deprived of a contractual benefit for purposes of § 1981.

Having carefully reviewed and considered the plaintiff's Rule 59 motion, the court remains convinced that the plaintiff's own undisputed testimony makes clear that plaintiff was not treated less favorably by McDonald's African-American manager because of his race, but because the manager legitimately wanted to accommodate all of her customers, not just the plaintiff. Because the substantial evidence simply does not show a racial animus at work, the Rule 59 motion to alter or amend the partial summary judgment will be denied in a separate order.

Turning to the Rule 56(f) notice entered by the court on May 5, 2011, it appears that summary judgment in favor of defendant also is proper with respect to plaintiff's public accommodation claim in Count I of the amended complaint for the same reason as the dismissal of his § 1981 claim — there is no substantial evidence of purposeful racial discrimination. Count I alleges a civil rights violation pursuant to 42 U.S.C. § 2000a. In relevant part, § 2000a provides:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

---

[4] There is no allegation or evidence of any segregated seating arrangements.

Section 2000a-3 provides for a private civil cause of action on behalf of any "aggrieved person" against any one engaging in prohibited conduct under the statute. Claims under both § 1981 and § 2000a require proof of intentional racial discrimination. See Carroll v. The Tavern Corp., 2011 WL 1102698, *17 (N.D.Ga., Feb. 9, 2011). The circumstantial evidence framework under McDonnell-Douglas requires the plaintiff in a § 2000a case to prove a *prima facie* case as follows:

> A similar *prima facie* formulation for Title II [§ 2000a] claims requires plaintiffs to show that they: (1) are members of a protected class; (2) attempted to contract for services and afford themselves the full benefits and enjoyment of a public accommodation; (3) were denied the full benefit or enjoyment of a public accommodation; and (4) such services were available to similarly situated persons outside plaintiffs' protected class who received full benefits or who were treated better than plaintiffs.

Carroll v. The Tavern Corp., 2011 WL 1102698, *18 (N.D.Ga., Feb. 9, 2011). The comparator required by the fourth element must be "similarly situated" to the plaintiff. Although the court has found no Eleventh Circuit authority explaining the concept of a "similarly situated" comparator in the context of § 2000a, the notion has been well defined in the employment context under Title VII, 42 U.S.C. § 2000e. To be "similarly situated" as a comparator under the McDonnell-Douglas test, a non-minority employee must be "'nearly identical [to the plaintiff] to prevent courts from second-guessing' reasonable decisions and 'confusing apples with oranges.'" Boykin v. Bank of America Corp., 162 Fed. Appx. 837, 839 (11th Cir., Dec. 21, 2005) quoting Silvera v. Orange County School Board, 244 F.3d 1253, 1259 (11th Cir. 2001). The same is necessarily true in the context of a § 2000a claim under the Civil Rights Act of 1964, in which Title VII is found along with Title II. Consistency in the use of the term "similarly situated" requires the court to determine whether a non-

minority customer of McDonald's, "nearly identical" to the plaintiff's circumstances, was treated more favorably than plaintiff.

It is here that both of the plaintiff's § 1981 and § 2000a claims fail — the group of six white customers was not "nearly identical" to the single African-American plaintiff. They were a group of six looking for seating large enough to accommodate all of them; the plaintiff was alone and needed only a smaller seating arrangement. The plaintiff had been drinking his coffee for about an hour when requested by the manager to move; the group of white diners had yet to order and were in need of seating at which to dine. The manager's legitimate business concerns for a group of six who had not yet eaten were different from those regarding a single patron who had been occupying a large table for about an hour. The circumstances of six diners yet to be seated were simply not comparable enough to those of the lone plaintiff who had been served about an hour before to allow a reasonable jury to infer that the reason plaintiff was asked to move was racial discrimination. Given that the McDonald's manager was herself African-American, there is nothing in these circumstances that logically and reasonably points to a racial animus against the plaintiff. There is no evidence of racial hostility by the manager, and there is no evidence that plaintiff suffered a denial of the services and amenities of the restaurant. He was simply asked to move to make room for a group to sit at the large table. Consequently, plaintiff has failed to present substantial evidence supporting the fourth element of his *prima facie* showing under § 2000a — he has not shown that a "similarly situated" non-minority customer was treated better than he.

Likewise, for the reasons discussed above and in the court's previous memorandum opinion concerning summary judgment, the plaintiff also is unable to show the third element that he was "denied the full benefit or enjoyment of a public accommodation." As explained, plaintiff received

the full benefit of the public accommodation in that he was served coffee and allowed to use the dining room to drink it. He was not treated in a racially hostile or segregated manner by the manager. Again, the "full benefit" of a public accommodation such as a restaurant does not mean that a customer can insist on a *particular* table. The full benefit that *any* customer may claim when he goes to a restaurant is the reasonable use of the restaurant's dining room to consume his food purchase, not a particular table. Plaintiff received the reasonable use of the dining room, and therefore, received the "full benefit" of the public accommodation.

## Conclusion

Based on the foregoing considerations, the court finds that the plaintiff's motion to alter or amend the court's May 5 order granting partial summary judgment is due to be DENIED.

Additionally, pursuant to Rule 56(f), the court finds that there is no genuine issues of material fact and that the defendant is entitled to summary judgment with respect to plaintiff's Title II claim under 42 U.S.C. § 2000a, as alleged in Count I. Plaintiff is unable to make out a *prima facie* case under Title II because he cannot present substantial evidence of either the third or fourth elements of the claim. The court will enter a separate order.

DONE this 24th day of May, 2011.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE